AMERICAN BONDING COMPANY OF BALTIMORE *v.* LAIGLE

STAVE & LUMBER COMPANY.

Opinion delivered January 19, 1914.

1. CORPORATIONS—AGENT—POWER TO SIGN ACCOMMODATION PAPER.—It is not within the real or apparent scope of authority of an agent of a corporation to bind the corporation by the execution of negotiable paper, for accommodation. (Page 156.)

2. PRINCIPAL AND AGENT—AGENT'S DEBT.—The agent of a corporation has no authority to use the funds of the corporation in payment of his private debt. (Page 156.)

3. CORPORATIONS—ACCOMMODATION PAPER—LIABILITY—DUTY TO REPUDIATE.—While a corporation is not liable on an accommodation note executed in its name by its agent, but if it paid the note without any knowledge as to the real facts, it is the duty of the corporation to exercise reasonable diligence in discovering the act of fraud of its agent, and if the corporation fails to repudiate the transaction within a reasonable time, the inference arises that it knew of the purpose of the payment, and that it ratified the unauthorized act of its agent, and it will not be permitted to recover back the amount of the note. (Page 156.)

4. CORPORATIONS—UNAUTHORIZED ACT OF AGENT—RATIFICATION.—Acquiescence for a considerable time by a corporation in the unauthor-

ized act of an agent, after knowledge or after such a length of time and such a condition of circumstances that a knowledge is to be inferred, will operate as a ratification of the agent's act. (Page 157.)

Appeal from Bradley Circuit Court; *E. E. Williams,* Special Judge; affirmed.

*D. A. Bradham,* for appellant.

1.   Anders, by drawing on the Bradley Lumber Company for the $4,492, expressly requested that company, to that extent, to pay the note of the appellee, of which he and others were joint makers.    Where one person, at the request of another, pays an obligation for which the other is legally liable, he can recover the amount so paid from the person for whose benefit it was paid.    28 Conn. 455; 13 La. Ann. 627; 97 N. W. 1056, 91 Minn. 339; 58 Atl. 714, 77 Conn. 155, 27 Cyc. 833-837.

2.   Where several are indebted on an obligation, and a third person pays the obligation at the request of one of the joint obligors, all may be sued in an action for money paid, and a recovery had against all of them.    11 Wend. (N. Y.) 87; 2 Denio (N. Y.) 205.    Anders' request, was, therefore, in law a request by all of the joint makers of the note.

3.   Notwithstanding the money paid to discharge the debt of another may have been paid without a request on the part of the debtor, yet if the debtor adopts and enjoys the benefit of the payment, an action may be maintained against him for money paid.    11 W. Va. 535; 21 Ala. 473; 39 Mo. App. 376; 18 W. Va. 299.    The note in question can not possibly be construed as the note of the plaintiff.    The loan to Forsythe was personal, and it is manifest that the name of the Bradley Lumber Company was affixed to the note without any consideration moving to it, but merely as an accommodation to Forsythe. The note is not binding upon the Bradley Lumber Company.    95 Ark. 368, 130 S. W. 162; 4 N. Y. Supp. 385; 68 Mich. 620, 36 N. W. 696; 19 La. Ann. 202; 82 Hun, 8, 31 N. Y. Supp. 44; 18 Col. App. 378, 71 Pac. 889.

*B. L. Herring,* for appellee.

The evidence makes it clear that Anders drew the draft for the $4,492, under directions of Bradley Lumber Company's manager, because he held that company's note for a greater amount. He was collecting a just debt when he made the draft, and did not undertake expressly nor by implication to repay the money procured by the draft. Forsythe or the company, perhaps both, owed the money. Whether Forsythe paid the note with his own funds or with money of the company, was immaterial to Anders. It did not change his attitude into that of a borrower with an implied undertaking to refund the money. 27 Cyc. 833.

McCULLOCH, C. J. Appellant, as assignee of the Bradley Lumber Company, instituted this action in the circuit court of Bradley County against the Laigle Stave & Lumber Company, a domestic corporation, and certain persons, to recover from them the sum of $4,492 and interest, the amount paid by the Bradley Lumber Company on a draft drawn on it by M. J. Anders, one of the defendants, who was secretary and manager of the Laigle Stave & Lumber Company.

The Bradley Lumber Company was, and is, a foreign corporation, with domicile and principal offices at St. Louis, Missouri. It also maintained offices and operated a manufacturing and business plant at Warren, Bradley County, Arkansas. The business and affairs at Warren were under the management and control of one Forsythe, a trusted employee of the company, who accounted to the home office at St. Louis. An auditor was sent down at frequent intervals to check up and audit the accounts of the business. The authority of Forsythe to perform any act in the management and control of the business at Warren seems to have been complete. In December, 1909, Forsythe, acting for his principal, the Bradley Lumber Company, purchased a tract of timber land from the Laigle Stave & Lumber Company, acting through its manager, M. J. Anders, the consideration for the purchase being the sum of $5,000, which was paid

by a draft of the Bradley Lumber Company. There was a previous understanding between Anders and Forsythe that the Laigle Stave & Lumber Company should lend the amount of the purchase price to Forsythe individually, which was done. The draft executed by the Bradley Lumber Company for the purchase price of the timber land was deposited in the Bradley County Bank to the credit of the Laigle Stave & Lumber Company, and Anders drew a draft on that fund in favor of Forsythe to cover the amount which he was lending the latter. Forsythe executed a note for the $5,000 in the name of his principal, the Bradley Lumber Company, due and payable ninety days after date, and delivered the same to Anders as security for the loan, and this note was by the Laigle Stave & Lumber Company assigned to the Bradley County Bank as security for money borrowed from the bank by the stave company and distributed to its stockholders. The bank also held, as security for the loan, another note executed by the Laigle Stave & Lumber Company and its codefendants, Adams, Anders and Colvin. On maturity of the note executed by Forsythe in the name of his principal to the Laigle Stave & Lumber Company, Anders made demand on Forsythe for the payment thereof, and Forsythe directed him to draw two drafts, one on him (Forsythe) for the sum of $650, and the other for the sum of $4,492 on the Bradley Lumber Company. These drafts were dated March 17, 1910, and were drawn and paid upon presentation through the Bradley County Bank. Forsythe was still in charge of the business, and when the draft on the Bradley Lumber Company was presented to him by a local bank at Warren, he paid it by drawing a draft for that amount on the Bradley Lumber Company at its home office in St. Louis, which draft was duly paid. In order to keep his books straight, and evidently to deceive his principal, he charged this amount on the books of the company to Anders as purchase price for timber, and it stood on the books in that way.

This action was instituted on July 6, 1912, which

was more than two years after the payment of the draft. In the meantime, Forsythe had died, though the date of his death is not shown in the record so far as we can discover, nor does the precise time appear when the officers of the Bradley Lumber Company ascertained that it had been defrauded by using the funds of the company in payment of the private obligations of its manager, Forsythe.

The trial of the cause resulted in a verdict and judgment in favor of defendants, and plaintiff has prosecuted an appeal to this court.

Plaintiff predicates its right to recover on the ground that the proceeds of the draft drawn by Anders on the Bradley Lumber Company and wrongfully paid by Forsythe were used in satisfaction and discharge of a note executed by all of the defendants to the Bradley County Bank, and that for that reason an implied promise on the part of the defendants arose to refund the amount so applied in satisfaction of that note.

If the facts were that the funds of the Bradley Lumber Company were used in discharge of an obligation of the defendants, and there was no other element in the case, the liability of defendants would be plainly established, for the acceptance by defendants of funds so advanced would raise, by implication, an obligation to repay. But the funds of the Bradley Lumber Company, though ultimately used by the drawer of the draft in satisfaction of a note executed by the defendants to the Bradley County Bank, were, in fact, paid over by Forsythe upon a draft drawn by Anders in satisfaction of Forsythe's own debt to secure which he had given the note of his principal, the Bradley Lumber Company, as security. In other words, the payment by the Bradley Lumber Company was made in discharge of the debt of Forsythe, its manager.

Now, it must be conceded that the note executed by Forsythe in the name of his principal, to secure his own debt, was not a valid obligation of the Bradley Lumber Company, for it is not within the real or apparent scope

of authority of an agent of a corporation, or even of its officers, to bind the corporation by the execution of negotiable paper for accommodation. *Simmons National Bank* v. *Dilley Foundry Co.*, 95 Ark. 368. Nor did Forsythe have authority to use the funds of the corporation in payment of his private debt.

Anders knew, when the note was executed by Forsythe, that the name of the Bradley Lumber Company was signed merely as an accommodation endorser, and, therefore, the paper was not binding on the Bradley Lumber Company.

There is no evidence that Anders, or his associates, entered into the transaction with any actual intent to defraud the Bradley Lumber Company, or knowledge that Forsythe was attempting to do so. They were, so far as this record is concerned, innocent of any such intention; but they were charged with sufficient knowledge to invalidate the note so far as any legal liability of the Bradley Lumber Company is concerned. They doubtless reposed complete confidence in Forsythe on account of his control and management of the affairs of the lumber company at Warren.

The Bradley Lumber Company was, therefore, not liable on the note, and the evidence shows that the draft was paid without any knowledge on the part of the company as to the real facts of the case. If the payment had been repudiated within a reasonable time, its right to recover the amount so paid would have been established. But, according to the undisputed evidence, it waited an unreasonable length of time before repudiating the transaction. It is true the testimony does not show that it knew of the fraud which had been perpetrated, any appreciable length of time before the commencement of this suit, but it, by the exercise of reasonable diligence, could have known it, and it was its duty to make proper inquiry. The length of time is such that an inference of knowledge may be drawn. Forsythe was in full charge of the business of the corporation, with authority to draw drafts and to pay drafts drawn on it.

In this instance he exceeded his authority in directing that a draft be drawn in satisfaction of his private debt and in paying that draft out of funds of the corporation. If the corporation had, within a reasonable time, repudiated the payment, an implied obligation on the part of those who received the money would have arisen. But the corporation has acquiesced for an unreasonable length of time under circumstances which, we think, justify the inference that the purpose of the payment and the use of the funds were known, and the unauthorized payment must be treated as having been ratified.

In 2 Thompson on Corporations (2 ed.), § 2019, the rule of acquiescence in or ratification of an unauthorized act of the officers or agents of a corporation is stated as follows:

"Acquiescence for a considerable time by a corporation, through its efficient agencies and the body of its stockholders, in a state of facts, after knowledge or after such a length of time and such a condition of circumstances that a knowledge is to be inferred—will operate as a ratification. * * * Ratification of this character may rest on the principle of equitable estoppel, on the theory that one man, though innocent, ought not to allow another innocent man to rest in the belief that a voidable engagement is valid until the latter has changed his position. It also rests on the moral consideration that the former, after allowing the hopes of the latter to be raised for a considerable length of time, in respect of whatever benefits may accrue or may have accrued from the engagement, ought not to be allowed to disappoint those hopes. The rule, therefore, is that where the agents of a corporation exceed their powers, their principal must, as in the case of a natural person, disaffirm promptly, or at least within a reasonable time, having regard to the circumstances of each case."

We think that the facts bring this case within that rule and that the plaintiff, as assignee of the Bradley Lumber Company, has not established its right to recover. According to the undisputed facts, the Bradley

Lumber Company acquiesced in the payment of the draft for such a length of time as that ratification is fairly inferable.

Other questions in the case need not be discussed for the reason that this fully disposes of it. The judgment is, therefore, affirmed.