## ARP & HAMMOND HARDWARE CO. v. HAMMOND PACKING CO. ET AL.*
### (No. 1192; June 2, 1925; 236 Pac. 1033)

CORPORATIONS—EXECUTION OF CORPORATE NOTES—ACQUIESCENCE IN ACTS OF OFFICERS—CONSIDERATION—EVIDENCE—NOVATION—PLEADING.

1. A long continued acquiescence on the part of directors and stock holders of a corporation in the execution by its president of company notes for its obligations in the course of its business, is equivalent to antecedent authority.

2. Stockholder, director, and vice president *held* charged with knowledge of execution of notes by president and secre-

tary, the only other stockholders, as respected ratification, where they were shown by the books which were open to his inspection, interest was paid annually, and his stock was pledged for payment.

3.  Where the agent of a corporation is allowed to exercise general authority in respect to its business or branch thereof for considerable time, the corporation is bound by his 'acts as if authority were expressly granted.

4.  In an action on corporate notes, where the defense was lack of consideration, plaintiff's evidence as to consideration being uncontradicted, there was no question for the jury as to lack of consideration.

5.  In action on corporate notes, evidence *held* insufficient to make question for jury as to lack of consideration.

6.  In action on corporation's note, absence of entries of certain items included in it from books of corporation *held* · not substantial evidence that such items were not properly chargeable to it.

7.  Any error made in sustaining plaintiff's demurrer to defendant's counterclaim or cross-petition, *held* waived on filing of 'amended counterclaim.

*See Headnotes: (1) 14a C. J. p. 370; (2) 14a C. J. p. 375; (3) 14a C. J. pp. 349, 350; (4) 14a C. J. p. 859; (5) 22 C. J. p. 879; (6) 29 Cyc. p. 1138; (7) 31 Cyc. p. 745.

APPEAL from District Court, Albany County; HARRY P. ILSLEY, Judge.

Action by the Arp & Hammond Hardware Company against the Hammond Packing Company and others. There was judgment for plaintiff, and defendant packing company appeals.

*William C. Mentzer* for appellant.

*William E. Mullen* appearing for Robert N. LaFontaine, trustee in bankruptcy of appellant packing company.

The court erred in sustaining plaintiff's demurrer to defendant's separate answer and cross·petition, and in refusing to make J. H. Arp a party to said suit; said separate answer alleged facts, which would entitle defendant packing company to an accounting, which would have disclosed material facts in support of defendant's claim of lack of con-

sideration of the notes in suit. Defendant was entitled to interpose an equitable defense; 1 Cyc. 737; 5600, 5660 C. S. The allegations of defendant's cross petition warranted the joinder of Arp as a defendant; White v. Reagan, 32 Ark. 281; Crockett v. Wood, (Va.), 34 S. E. 96; Ulman v. Iager, 155 Fed. 1011; Hutson v. Wood, (Ill.), 105 N. E. 343; 31 Cyc. 222; Weaver v. Richardson, 21 Wyo. 343; J. W. Hammond was without authority to execute the notes for the company which were without consideration; Trust Co. v. Loan Co. 167 N. W. 785; Bentley v. Co., 184 Pac. 113; 10 Cyc. 808; 14-a C. J. 119; Shetter v. Co. 24 Pac. 25; the burden of showing the validity of contracts and of the fairness and honesty of his dealings with the corporation is on a director, officer or agent; Howland v. Corn, 232 Fed. 35; Hilger v. Lang, 175 Pac. 597; Twin Oil Co. v. Marbury, 91 U. S. 587; 3 Fletcher 30-47; ratification by stock holder and directors of an officer's acts is a question of fact for the jury; there can be no acquiescence without knowledge; Scott v. Jackson, 26 Pac. 898; Ins. Co. v. Caldwell, (Ark.) 58 S. W. 355; Pence v. Langdon, 99 U. S. 578; Gallup v. Fox, 30 Atl. 760; Stoner v. Mau, 11 Wyo. 408; as between the parties and in the absence of express ratification, there can be no ratification other than an acceptance of benefits; Ry. Co. v. Carr, 157 Pac. 529; Bank v. Halsey, 19 So. 522; Nisson v. Millen, 91 N. E. 994; a note in renewal of a note void for want of consideration is also void; Central Bank v. Ford, 152 S. W. 700; the conflicting nature of the evidence created a question for the jury; R. R. Co. v. Pollack, 16 Wyo. 321; Peck v. Boomersheim, 190 N. W. 690; Moore v. Bank, 121 Pac. 626; Alexander v. Co., 154 Pac. 914; where there is a disputed question of fact, it is error to direct a verdict; 26 R. C. L. 1066; Johnson v. Co., 72 N. W. 1115; the question of consideration should have been submitted to the jury; 26 R. C. L. 1073; Buffington v. Cook, 73 Am. Dec. 491; Guynn Co. v. Co., 38 S. E. 894; Moore v. Bank, supra; the question of the credibility of the witnesses should have been submitted to the jury; Dimock v. Bank,

190 N. W. 485; Power v. Wilson, 196 N. Y. S. 600; plaintiff's witnesses were interested, 38 Cyc. 1570; Mich. Co. v. Co., 52 N. W. 1070; the verdict should not be directed where exceptions have been saved to ruling on evidence; Flandreau v. Ellsworth, 28 N. Y. S. 671; plaintiff's failure to produce books on an issue of lack of consideration where book entries were involved, created a question for the jury; Rodllke v. Taylor, 210 Pac. 863; Beh v. Van Ness, 180 N. W. 292; Long v. Conn, 179 N. W. 644; where there is any evidence upon which the jury could find against plaintiff the case should be submitted to the jury; 26 R. C. L. 1068.

*N. E. Corthell, John W. Lacey* and *Herbert V. Lacey* for respondent.

The ruling sustaining demurrer to defendant's cross petition was correct; it involved new people and new controversies; 5663 C. S. 31 Cyc. 224; Crockett v. Wood, supra; new parties cannot be introduced by cross bill; Shields v. Barrow, 17 How. 129; Perea v. Harrison, 41 Pac. 529; Buscher v. Volz, 58 N. E. 269; Andrews v. Kibbee, 12 Mich. 94; the cross bill is auxiliary to the proceeding in the original suit; Hill v. Frank, 40 Pac. 128; defendant cannot inject a new controversy between himself and an outsider, unless some party already before the court is interested, or will be affected by the result; Alpers v. Bliss, 79 Pac. 171; Am. Exchange Bank v. Davidson, 72 N. W. 129; a new and amended petition after demurrer waives any error in sustaining demurrer; Gale v. Co., 14 Calif. 26; Ganceart v. Henry, 98 Calif. 281; Elliott App. Pro. Page 510, Section 595; the notes were authorized by defendant; acquiescence in acts of a corporate officer by stock holders and directors over a period of years has the affect of antecedent authority; McKell v. Co., 175 Fed. 321; U. S. L. Co. v. Co., 194 Fed. 866; Jacksonville v. Hooper, 160 U. S. 514; Sun Printing Co. v. Moore, 183 U. S. 642; Pollitz v. R. Co., 207 N. Y. 113; Bank v. Lbr. Co., 146 S. W. 588; West Side Irr. Co. v. U. S. 246 Fed. 212; Bennett v. Co., 51 Atl. 706; Trust Co.

v. Miller, 151 N. W. 813; Sherman v. Fitch, 98 Mass. 59; Am. B. Co. v. Lbr. Co., 163 S. W. 167; City v. Eaves, 44 So. 588; 2 Morawetz on Corps. 618; Alaska v. Solner, 123 Fed. 855; R. R. Co. v. Lbr. Co., 55 S. W. 944; G. V. B. Min. Co. v. First Nat'l Bank, 95 Fed. 23; 1st Nat'l Bank v. Min. Co., 89 Fed. 439; Nat'l Life Ins. Co. v. Headrick, 112 N. E. 559; Depot Co. v. Brewing Co., 171 Pac. 223; Smith v. Bank, 54 Atl. 385; Alexander v. Irrigation Co., 85 N. W. 283; Frank v. Hicks, 4 Wyo. 502; Mathews v. Nefsy, 13 Wyo. 458; besides authority previously given, the evidence shows ratification by subsequent acquiescence; Atherton v. Beaman, 256 Fed. 871; a person may be authorized to act as agent for both contracting parties, and it is often done in the case of small corporations; Leavenworth v. R. R. Co., 134 U. S. 688; Pauly v. Pauly, 107 Cal. 8; Adams Co. v. Senter, 26 Mich. 73; Louisville N. A. Co. v. Carson, 38 N. E. 140; Smith v. Stone, 21 Wyo. 62; the evidence shows that C. E. Hammond assented to the execution of the notes in suit; Smith v. Mount, 129 S. W. 722; Hingtgen v. Thackery, 121 N. W. 839; Powers v. Perry, 106 Pac. 595; Schuster Co. v. Pub. Co., 162 N. W. 173; an allegation that appellant executed the notes is sufficient; Plumb v. Curtis, 33 Atl. 998; Higbee v. Trumbauer, 83 N. W. 812; St. Louis Co. v. Mill Co., 155 Pac. 599; It is the duty of the court to direct a verdict, if as a question of law, there is no issue to go to the jury; Franchina v. R. R. Co., 195 Fed. 462; Hiatt v. Brooks, 22 N. W. 73; Hart v. R. R. Co., 196 Fed. 180; Scherer v. Griffin, 122 N. W. 1000; State v. Bismark and Co., 153 N. W. 459; Austin v. Service Co., 132 N. E. 458; Interstate Compress Co. v. Agnew Co., 276 Fed. 882; Riner v. Ins. Co., 9 Wyo. 81; Boswell v. Bank, 16 Wyo. 161; Calkins v. Coal Co., 25 Wyo. 409; a case should not be submitted to the jury where a verdict must rest upon a guess; Powers v. R. R. Co., 106 N. W. 1117; Scott v. R. R. Co., 135 N. W. 110; Kruck v. Conn. 80 Atl. 162; every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; 3957 C. S. the negotiable instruments

law places the burden on the maker of a note to show want of consideration; Columbian Cons. v. Dickinson, 158 N. C. 207; Bank v. Ford (Wyo.) 216 Pac. 671; Brannan's Negotiable Instruments Law, page 97.

BURGESS, District Judge.

The Arp and Hammond Hardware Company, plaintiff below and respondent here, obtained a judgment in the District Court of Albany County against the Hammond Packing Company, defendant below and appellant here. To review this judgment the packing company brings the case here by direct appeal.

The recovery was upon nine promissory notes given by the packing company to the hardware company but we are concerned here with only three of them, the other six having been eliminated from our consideration by the brief of counsel for the appellant. The three notes in controversy are one dated January 1, 1910 for $17,276.15, one dated February 1, 1910 for $13,600.00, and one dated February 1, 1910 for $13,100.00; all of them are payable to the order of the Arp and Hammond Hardware Company, all recite they are given for value received, and all are signed Hammond Packing Company, J. W. Hammond, President, attest J. H. Arp, Secretary. All are payable two years after their respective dates.

While various defenses were pleaded by the defendant in its answer to the plaintiff's petition, there are but two urged in the appellant's brief. These are that the notes were given without consideration and without authority.

The case was tried to a jury but upon the conclusion of all the evidence the Court directed the jury to return a verdict in favor of the plaintiff and against the defendant upon all the notes sued upon. The appellant claims the case is one which should have gone to the jury and this requires a consideration by us of all the evidence for the purpose of determining whether, when both parties had rested, the issue was one of law for the Court or one of fact for the jury.

The evidence in the case is rather voluminous, and the history of the transactions between the two companies over a period of many years is related in detail. We have read the evidence with much care but do not feel called upon to quote it or review it at length.

Were the notes executed without authority? Both parties to the suit are Wyoming corporations. The packing company was incorporated in 1900 by J. H. Arp, J. W. Hammond, Sr., and J. W. Hammond, Jr., for the purpose of carrying on the packing house, and engaging in a general ranch, business. The incorporators constituted the first board of directors or trustees, as they were then called. In 1904, J. W. Hammond, Jr., was succeeded on the board by Clarence E. Hammond, son of J. W. Hammond, Sr., and from thence on until the death of Hammond, Sr., in 1921, the directors were J. H. Arp, J. W. Hammond, Sr., and Clarence E. Hammond. The stock in the company was owned from the time of its incorporation until February 5, 1910, 498 shares by J. H. Arp, 1 share by J. W. Hammond, Sr., 1 share by C. E. Hammond. On or about February 5, 1910 there was a transfer of the stock among these parties so that from that time until February 14, 1921, one share was owned by J. H. Arp, 399 shares by J. W. Hammond, Sr., and 100 shares by C. E. Hammond, and from February 14, 1921 until the death of Hammond, Sr., in April of that year, the stock was owned 1 share by Arp, 259 shares by Hammond, Sr., and 240 shares by C. E. Hammond.

The packing company had two places of business, one—the packing house—near the city of Cheyenne, where animals were slaughtered and from which meat products were shipped; the other, an office in Cheyenne, where the books were kept and the financial business looked after and managed. C. E. Hammond was superintendent or manager of the plant while his father, J. W. Hammond, Sr., attended to the office and managed the financial affairs of the company.

The business of the company was such as to require the borrowing at times of various sums of money. In the testi-

mony given it is estimated that the sums so borrowed aggregated, during the period from about 1901 to 1921, between $200,000.00 and $300,000.00, for which 40 to 75 different notes were given. All these notes were signed by "Hammond Packing Company, J. W. Hammond, President."

There was never any resolution or formal action of the board of directors of the company authorizing or directing J. W. Hammond, Sr., to borrow any money on behalf of the company or authorizing him to give the notes of the company for any moneys borrowed, including the notes in controversy in this suit, but the management of the financial end of the business was turned over to him and he was expected by all the directors and stockholders of the company to run that end of it, and he did so, paying bills, signing checks, borrowing money, giving notes therefor and paying the interest thereon. The whole financial management and control of the company was, by the mutual consent of the other directors, vested in him and, during the period of twenty years or so, while he was so managing the affairs of the company, there was never any question raised by any director or stockholder of the company as to his right or authority to borrow money and to give the company's notes until after his death, and the question was then raised by Mr. C. E. Hammond.

The evidence clearly shows and without substantial contradiction that the notes in question were given for company obligations, in the course of its business, by its president pursuant to a custom and practice long established, and acquiesced in by all the stockholders and directors, which permitted him to give company notes for company indebtedness. This long continued acquiescence on the part of the directors and stockholders in the exercise by the president of such power was equivalent to antecedent authority.

It is true C. E. Hammond did not participate in the settlement at which the notes were given, was not present when they were delivered, and testified he knew nothing of them until 1921, over eleven years after they were given. We

must perhaps take as true his testimony that he had no actual knowledge of the existence of these notes during this time, yet on May 26, 1910 an entry was made in the books of the packing company as follows: "Bills payable $45,000 debit; bills payable credit 1-1-10 two years, six per cent. $17,276.15, bills payable 2-1-10 two years, 8 per cent. $13,100, bills payable 2-1-10 $13,600., bills payable 2-1-10 two years 6 per cent. 1083.85" thus mentioning these three notes. Each of these notes contained a clause stating that there had been deposited with it as collateral security certain stock of the packing company and mentioned therein was "One certificate numbered 5 for one hundred shares of the capital stock of Hammond Packing Company—the property of C. E. Hammond." Then on January 14, 1914 he, together with his father, signed the following "For value received we hereby agree that the capital stock in the Hammond Packing Company heretofore deposited by us with the Arp and Hammond Hardware Company as collateral security upon certain notes for $45,000 executed by Hammond Packing Company in favor of said Arp and Hammond Hardware Company shall stand and be held likewise upon the same terms as collateral security for any and all obligations which we may have incurred or may hereafter incur in favor of said Arp and Hammond Hardware Company." These "certain notes for $45,000" included the three notes in question. And on February 14, 1921 C. E. Hammond and his father signed another instrument of similar import in which reference is made to the capital stock deposited by them with the Arp and Hammond Hardware Company to secure notes of the Hammond Packing Company.

The Hammond Packing Company paid, upon the usual interest paying dates as a rule, the interest as it accrued upon these notes commencing September, 1910, and down to and including December, 1920, and amounting in the aggregate to almost $30,000.

During all this time C. E. Hammond was a stockholder and director in the packing company and its vice presi-

dent. The books of the company were open to his inspection showing these three notes; his stock was pledged to their payment, his company was paying each year interest on them to the amount of approximately $3638. He may, as he says, have been ignorant of the existence of these notes for eleven years following their execution, and without knowledge of them on his part there could not be, counsel for the packing company argues, any ratification of the notes by him. But under the circumstances of this case he should have known of them before the lapse of so much time, and he stands chargeable with knowledge of them. He certainly had some duties to perform as a director in the company and had he been attentive to those duties he would soon have learned their existence. No fraud was practiced upon him or attempt made to mislead him. If he manifested no concern in the financial affairs of the company but left, as he says, everything of that nature to his father, complaint can not now be made of that which was so obvious but of which he preferred to remain ignorant. "He may not" as said in Pence v. Langdon, 99 U. S. 578, 25 L. ed. 420 "wilfully shut his eyes to what he might readily and ought to have known."

To us the evidence shows without any substantial dispute both a prior authority for, and a subsequent ratification of, the notes in question.

In reaching this conclusion we are but following some of the long established and elementary principles of the law of Agency and Private Corporations. It is well settled that if an agent of a corporation is allowed to exercise general authority in respect to the business of the corporation, or a particular branch of it, for a considerable time—in other words, if he is held out to the world as having authority in the premises, the corporation is bound by his acts, in the same manner as if the authority were expressly granted. Beach on Modern Law of Contracts, Vol. 2, Sec. 1005.

In Bennett v. Millville Imp. Co., 51 Atl. 706, 67 N. J. Law 320, is quoted with approval, 2 Cook Corp. Sec. 718,

that ''In all cases the president binds the corporation by his acts and contracts when he is expressly authorized to so act or contract or when he has been permitted by the corporation for some time to act and contract for it.''

In American Company vs. Laigle Stone & Lumber Co., 163 S. W. 167; 111 Ark. 151; Section 2019, Vol. 2, Thompson on Corporations, is quoted that ''Acquiescence for a considerable time by a corporation, through its efficient agencies and the body of its stockholders in a state of facts, after knowledge, or after such a length of time and such a condition of circumstances that a knowledge is to be inferred, will operate as a ratification.''

In Mahoney Min. Co. v. Anglo-California Bank, 104 U. S. 192, 26 L. ed. 707, Justice Harlan says ''An agency may be established by proof of the course of business between the parties themselves, by the usages and practice which the company have permitted to grow up in its business, and by the knowledge which the board charged with the duty of controlling and conducting the transactions and property of the corporation had, or must be presumed to have had, of the acts and doings of its subordinates in and about the affairs of the corporation.''

In Frank v. Hicks, et al., 4 Wyo. 502, 35 Pac. 475 the question was raised as to the authority of the President and Secretary of a corporation to execute a deed of trust conveying after acquired property and Justice Conaway says ''The execution of the deed of trust in the form in which it appears, and the issue of the bonds has been ratified by the company by long acquiescence, and by accepting and retaining the resulting benefits.''

See also Sun Printing and Publishing Ass'n. v. Moore, 183 U. S. 642; 22 S. Ct. 240, 46 L. ed. 366; West Side In. Co. v. U. S., 246 Fed. 212, 158 C. C. A. 372.

What was the consideration for the notes? The three notes in dispute were given as the result of a settlement between the two companies of their accounts on or about February 5, 1910, the packing company acting through its pres-

ident, J. W. Hammond, and the hardware company through J. H. Arp.

The consideration for the note of $17,276.15 was made up of the following items: four notes payable to the hardware company and signed by the packing company, one for $17,490.00 dated Dec. 31, 1907, one for $2939.00 dated Dec. 10, 1909, and two others, each for $500.00 (their dates not appearing in the record), two interest charges, one for $1224.30 and the other for $1107.97, two charges for merchandise sold, one for $1775.95, the other for $134.85. Against the aggregate of these sums a credit of $8395.92 was allowed, leaving a balance of $17276.15 in favor of the hardware company and for which sum of the note was given. The credit of $8395.92 was in fact due J. W. Hammond, Sr., but he allowed it to the packing company, and the packing company received the benefit of it.

Appellant claims there was no consideration for the $17,-490 note above mentioned because ten thousand dollars of it represented money advanced to the packing company by Arp or by the hardware company, while Arp owned and operated it before its incorporation, but Arp testified, and his testimony is uncontradicted, that when the Hammond Packing Company was incorporated all of the property of the packing house was turned over to it, and as a part of the purchase price it assumed all the debts including this ten thousand dollars. This note, it may be added, dated Dec. 31, 1907, appears upon the books of the packing company as one of its obligations and was surrendered up to the packing company at the time of the settlement in February 1910.

It is also said that the $2939.00 note and the $1775.95 merchandise item to the extent of $1368.25 were balanced in the general account as paid. The basis for this contention is that certain books of the packing company were produced by it and the witness Schroeder was interrogated, on cross examination, in reference to the account of the hardware company appearing therein. The books themselves,

or any part thereof, were not offered in evidence. The witness was asked about various entries in the account of the hardware company in the books of the packing company with the purpose, we take it, of discrediting or impeaching his testimony but the account itself was not offered or received, is not in the record, and from the questions and answers of the witness we would say there was no successful impeachment. There is no evidence that the $2939 note and the merchandise account were paid in the general account.

Again it is said that the items of $1107.97, $1224.30, $500.00 and $500.00 going into the $17,276.15 note are not found in the books of the packing company. The absence of these entries from the books would not, under the circumstances of this case, we take it, constitute substantial evidence that they were not properly chargeable to the packing company. 22 Cyc. 879.

The consideration for the $13,100.00 note was moneys advanced by the Hardware Company to the Packing Company to take up three notes of the Packing Company's held by the Stockgrowers National Bank of Cheyenne of the following amounts, $5200.00, $4700.00 and $3200.00. The Packing Company received the money and paid the notes. Counsel for appellant raises some question as to the sufficiency of the evidence touching these items but we do not deem them serious enough to merit extended discussion.

Concerning the third note for $13,600 it appears that the packing company had executed in favor of John W. Lacey two notes, one for $11,100.00 and another for $2500.00. In the settlement above mentioned the Hardware Company paid or took up these notes by giving Lacey its own note for $13,600.00 and the packing company in turn gave the hardware company its note for a like amount. The two Lacey notes were surrendered to the packing company.

It is now claimed by appellant that there was evidence sufficient to go to the jury, showing a credit or payment of $2000 on the $2500.00 Lacey note, so that the Hardware Company, if it might recover at all on the $13,600 note,

could recover only $11,600 thereof, the balance remaining after deducting said $2000 credit. That claim is based upon evidence of an entry in one of the books of account of the Hammond Packing Company brought out on cross examination of the Hardware company's bookkeeper. But that witness testified in effect that the book entry aforesaid did not show a payment upon said note. He was asked: "So, evidently the $2000 that appeared to have been there paid on the $2500 note to J. W. Lacey was not credited on that note at all." He answered: "Not at all, I would say." Being then asked: "You would say it was paid from the record?", he answered: "I would say from that, no." He had just before that testified that the entry did not necessarily mean a payment of $2000 on the note "because there is a balance on the top 'Account forwarded,' " and "then," after the supposed credit entry, it says, 'bills payable carried forward in detail,' and there are two notes to Lacey, eleven thousand one hundred and twenty-five hundred dollars." The entries themselves were not introduced in evidence, and the above is all of the evidence on the subject of the supposed credit. However, assuming without deciding, that the evidence might be sufficient otherwise for the submission of that matter to the jury, we fail to see how the fact of such payment, if made, can affect the right of the Hardware Company to recover the full amount of the said note given to it by the Packing Company.

The consideration for this $13,600 note was the extinguishment of the original indebtedness of the packing company to Lacey, and the assumption by the Hardware Company of an obligation to pay him $13,600. There was thus a novation, the making of a new contract, and the cancellation of the old, and if the $2000 were ever paid, it was paid upon the old note that was surrendered and not upon the one here in suit. It has been held that as between the creditor and the substituted debtor the state of accounts between the creditor and the original debtor is of no concern. See 29 Cyc. 1138, and cases there cited. So if Lacey were bringing

suit against the Hardware Company upon the $13,600.00 note given to him by it in discharge of the original notes of the packing company, any payment upon these notes could not be urged as an offset, why then should the packing company be permitted such an offset in a suit against it by the hardware company upon the note here in question? It would be a great injustice to the hardware company if it must pay Lacey the full amount of his note, and be able to collect only a portion of the note given it by the packing company.

Counsel for the appellant has pointed out, with much emphasis, what he considers to be serious discrepancies and contradictions in the testimony of the plaintiff's witnesses and which, he believes, so discredits them as to require the submission of the case to the jury. With his views, however we are constrained to say we can not concur.

Because Arp was a stockholder, director and officer in both companies counsel for the appellant insists the hardware company must show the fairness of the settlement out of which the notes were given and that there was a full and adequate consideration. We think the plaintiff did so. We can find in the record no evidence of fraud or unfair dealing in the transactions between these two companies.

The evidence in this case is, as we read it, all one way. Upon none of the material issues raised by the pleadings is there any substantial conflict in the evidence. The plaintiff clearly and convincingly established that the notes in question were executed and delivered, that they were given for valuable consideration and with authority, and were unpaid. The defendant offered no substantial evidence in contradiction. It thereupon became the duty of the court to instruct the jury to return a verdict in favor of the plaintiff and in this there was no error. Upon the close of all the evidence the issue was one of law for the court and not one of fact for the jury.

Complaint is made that the trial court erred in sustaining the plaintiff's demurrer to the defendant's counterclaim in which it was sought to make J. H. Arp a party to

the suit.   Upon the sustaining of the demurrer the defend-
ant filed an amended counter claim, or cross petition as
termed by the pleader, to which a reply was filed. Any
error committed in sustaining this demurrer was waived
by the defendant when it filed its amended counter claim.
Ganceart v. Henry, 98 Cal. 281; 33 Pac. 92; Squire Rosa v.
M. K. & T. Ry. Co., 18 Kan. 124; Elliott Appellate Pro-
cedure, Sec. 595.

There being no error in the record the judgment must be
affirmed and it is so ordered.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.   BLUME, J., did
not sit.