## Rogers-Siler Grocery Company v. Pickrell-Craig Company.

(Decided February 18, 1921.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Contracts—Issues, Proof and Variance.—Under the common law practice it was a fatal variance when the proof showed a differently evidenced contract from the one declared on, as, for instance, proof of a written contract where the pleadings alleged an oral one, and vice versa, and this was true whether the variance was or not material; but this harsh rule has been modified by sections 129 and 130 of our Civil Code of Practice, which do not permit a litigant to be defeated because of a variance, unless it is a material one, and it is not material unless it misleads the litigant to his prejudice, and the burden is on the one claiming to have been misled to show that fact to the satisfaction of the court. Under this modification of the common law rule a· suit based on an alleged oral contract will not fail because of proof of a written contract conforming substantially in every particular to the alleged oral contract.

2. Contracts—Issues, Proof and Variance.—A variance, in law, means a difference between an allegation of a litigant's pleading and his proof sustaining it, and does not mean a difference between his allegation and his opponent's proof concerning it.

3. Contracts—Consisting of Separate Sheets of Paper—Alteration or Modification.—A written contract whether required to be in writing or not may consist of separate parts on separate sheets of paper, though each be executed and agreed to at different times, and a written contract may be altered or modified by another written stipulation, though the latter be contained in a letter addressed to the other party, and although there may be no change or alteration in the words of the originally drafted contract, and if such modification is made at the suggestion of the other party the contract will be complete as soon as the letter containing it is

mailed, provided it is written within a reasonable time after the request for the modification.

W. FOSTER HAYES, E. B. ANDERSON and FRED FORCHT for appellant.

GEO. D. CALDWELL and TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellee and plaintiff below, Pickrell-Craig Company, a corporation, sued the appellant and defendant below, Rogers-Siler Grocery Company, also a corporation, in the Jefferson circuit court to recover damages alleged to have been sustained by plaintiff because defendant failed and refused to accept and pay for 400 bags of Colorado Pinto beans which plaintiff as a wholesale dealer in produce claims to have sold defendant on the 22nd day of October, 1918, under an oral contract entered into over the telephone between Louisville and Owensboro. The damage claimed was the difference in the market value of the beans at the time defendant agreed to accept and pay for them under the terms of the contract, and the price which it agreed to pay for them under the contract, and other items such as freight, storage, etc., legally recoverable in such cases, aggregating a total sum of $913.36. The answer put in issue all of the affirmative allegations of the petition and at the trial the only issue seriously contested was the one denying that defendant, on the day specified, or at any other time, entered into the contract sued on. That the beans were ordered by plaintiff, that they were shipped from Colorado and arrived in Owensboro on time, and that the items composing the damages sued for are correct, were each and all practically admitted, or indisputably established. The court at the close of all the testimony peremptorily directed the jury to return a verdict in favor of plaintiff, which was done, followed by a judgment in its favor for the amount sued for, which defendant seeks to reverse by this appeal.

Clearly from what has been said the only question for determination is whether there was a contract for the purchase of the beans, and if so, whether it was one upon which plaintiff could recover under the state of its pleadings which, as we have seen, alleged an oral contract of sale. The only evidence in the record relating to the con-

tract is the testimony of Otis W. Pickrell, plaintiff's president and general manager; the testimony of B. F. Siler, who sustained a similar relation to defendant, and some letters and writings to which we will hereafter refer.  Pickrell testified that his company had for quite a while transacted business with the defendant (it being engaged in the wholesale grocery business in Owensboro) and that it was plaintiff's only customer at that place; that on the day the contract is claimed to have been executed he called Mr. Siler over the telephone and conversed with him relative to the purchasing of the beans and that the latter agreed to take them upon the terms proposed and that he accepted the order and later, on the same day, ordered from a firm in Colorado the shipment of the beans to Owensboro, Kentucky, and that they arrived within the time agreed upon in the contract when defendant refused to accept them. He also testified to the items of damage, but which as we have seen are not seriously contested.  On the same day (but after the beans were ordered) plaintiff wrote defendant a letter containing this statement: "Confirming telephone conversation, enclosed herewith please find contract covering 400 bags of Colorado Pinto Beans for November shipment booked at $7.50 F. O. B. Colorado, car to be loaded with 800 bags and to be stopped at Owensboro, Ky., 400 bags of which are to be taken out there and the remaining 400 bags sent on to Louisville."  With that letter there were enclosed two copies of a writing in the nature of a memorandum confirmatory of the contract, in which writing the terms of payment are stated to be "F. O. B. Colorado Common Points, net cash payable ten days from date of draft." It was contemplated that the draft would be drawn on defendant by the Colorado firm who shipped the beans and would be mailed to defendant at the time of the shipment and would under the above stipulation be payable ten days thereafter whether the beans had arrived or not Defendant made objection to this because it desired to inspect the beans after their arrival at Owenboro before paying for them, and accordingly on October 23, 1918, it wrote plaintiff, saying:

"We are returning herewith contract on Colorado Pinto Beans, requesting that you change the terms of your contract to read f. o. b. Colorado Points, net cash payable on arrival of beans, instead of payable ten days from date of draft.

"We feel that it is only fair to us to know what we are getting in this line of merchandise. In fact these are the only terms that we will accept this car on. Really we prefer to cancel the car being offered today $7.25 f. o. b. Colorado on the same goods, but, will take the beans if the contract is fair to us and we insist that the inclosed contract is not fair. The beans are usually 30 days arriving here." It is testified by Siler that he returned to plaintiff both copies of the memorandum contract in that letter, but Pickrell denies this, and the circumstances appearing in the case, but which are not necessary to here relate, strongly sustain his denial. There was, however, enclosed in that letter the carbon copy of the memorandum contract and it was altered so as to make the draft payable on "arrival of car." On the same day (October 23rd) plaintiff wrote defendant a letter in which it said, *inter alia*: "They (the beans) should come through from Colorado in ten days and if they are out a few days longer than that time it is perfectly agreeable to us that you hold the draft until arrival and examination." Pickrell testified that he enclosed in that letter the altered or modified carbon copy of the contract which had been returned to him, but Siler denied any such enclosure and he likewise denied that he ever received from plaintiff the original copy of the contract after he returned it with his letter of October 23, although it was in his possession and he produced it at the trial. Upon receipt of plaintiff's letter of October 23rd, in which it agreed for the draft to be payable after "arrival and examination" of the beans, and on October 25th, defendant wrote plaintiff, "We still maintain that the enclosed contract is arbitrary, unfair and unsatisfactory, and have not and will not arrange to sign such a contract." Other correspondence followed, resulting in defendant declining to accept the beans, which finally culminated in this suit. Siler admitted the telephone conversation substantially in the terms testified to by Pickrell, except that he stated that "he (Pickrell) said he would send me a satisfactory contract. When the contract arrived, it was not satisfactory, not payable on arrival and examination of beans." In another part of his testimony he admits buying the beans at the price agreed upon but that they were "subject to payment on arrival and examination of the beans."

Under this condition of the proof it is first contended that if there was any contract at all for the purchase of the beans it was a written and not an oral one, and that plaintiff having declared on an oral contract its suit should fail upon proof of only a written one. In other words, it is insisted that the variance between the oral contract declared on and the written one (if proven at all) is a material variance, so as to constitute a failure of proof, and necessitate a dismissal of the action, and in support of this contention we are cited to the text on page 753 of 13 Corpus Juris, which is in language broad enough to support the contention; but whether the jurisditions, whose opinions are cited in support of the text, adhere to the common law practice, or whether they are governed by code provisions we do not know; but the rule announced by them would strongly indicate that they administered the technical and arbitrary rules of common law procedure, which it is well known were so strict as to amount in many instances to a practical denial of justice. Under them any kind of variance between the allegations of the pleading and the proof was fatal, whether the variance was material or immaterial, or whether or not it misled the opposite party to his prejudice. One of the purposes in the enactment of codes of practice was to remove this and other strict rules of the common law practice, some of the requirements of which were wholly immaterial, and which in no manner affected the merits of the controversy or prejudiced the rights of the parties in the prosecution or defense of the suit. It is therefore enacted in section 129 of our Code that: "No variance between pleadings and proof is material, which does not mislead a party, to his prejudice in maintaining his action or defense upon the merits. A party who claims to have been so misled must show that fact to the satisfaction of the court; and, thereupon, the court may order the pleading to be amended upon such terms as may be just;" and section 130 thereof says:

"If such variance be not material, the court may direct the fact to be found according to the evidence, and may order an immediate amendment." In section 131, it is provided in substance that it is only when the allegation is unproven "in its general scope and meaning" that the variance is material and will be fatal unless the pleading is amended.

The contract sued on in this case is not one which the law requires to be in writing; and if such a contract is reduced to writing it manifests only a method which the parties adopted to evidence their contract, i. e., it is evidenciary only and the writing is not legally essential to the validity of the contract. If it develops in the proof that the contract was in writing but its terms and obligations are substantially the same as those declared on as resting in parol only, it is difficult to see how the one denying the existence of the contract can in any manner be misled to his prejudice. The principle of practice is altogether different from the one announced in the cases of Newton's Executor v. Fields, 98 Ky. 186; Price v. Price's Ex'r, 101 Ky. 28; Smith v. Robinson, 185 Ky. 76, and O'Kain v. Davis, 186 Ky. 184, wherein it is held that a recovery or a defense may not be sustained upon reliance on an express contract where only facts are proven which would raise an implied contract. It requires no analysis to point out the wide difference between the two cases. Multifarious are the facts from which an implied contract will arise, and to permit one to recover or defend under proof of such facts when he had declared on an express contract, would place his antagonist at a great disadvantage at the trial in being required to anticipate and meet testimony concerning the many facts out of which an implied contract could arise when he was only called upon in the pleadings to refute the claim of a definitely alleged express contract.

Nor does the principle announced in the case of Gainesboro Telephone Co. v. Buckner, 160 Ky. 604, apply to the facts in this case. There it was held that the variance between plaintiff's allegations and his proof was material and amounted to a failure of proof and was a case where some one or more of plaintiff's allegations were unproven "in its general scope and meaning," which brought the case directly under the provisions of section 131 *supra* of our Civil Code.

We therefore conclude that the variance, if any, contended for in this case was, under sections 129 and 130, *supra,* of the Civil Code, immaterial and therefore not fatal to plaintiff's cause of action. This court so held in the cases of Illinois Central R. R. Co. v. Curry, 127 Ky. 643 and B. & O. S. W. R. R. Co. v. Wood, 130 Ky. 839, in each of which opinions the conclusion of the court was rested upon the provisions of the Code *supra.* Defend-

ant's counsel seeks to avoid the effect of those decisions upon the ground that defendant in each of them, in their respective answers, denied the oral contract relied on by the plaintiffs therein and *affirmatively alleged* that the contract sued on was not an oral one but was in writing. The facts as to the conditions of the pleading in those cases are as counsel contends, but this court did not stress that feature of the case as the controlling reason for the opinions.   It was mentioned only incidentally and was only a persuasive fact for the conclusion reached.   We are unable to draw a distinction between a litigant who relied *in his pleading* upon a differently evidenced contract, and one who relied *in his proof* upon a similarly evidenced contract. In each case the discrepancy relied on affects a matter which is merely evidentiary and is available for whatever it is worth whether pleaded or not.

It is insisted by plaintiff's counsel that a technical variance in law is a material difference between a party's pleading and *his* proof, and can not arise when the var is produced by the opposite party's proof.   This contention embodies a sound rule of practice as is laid down in 22 Encyclopedia Pleading and Practice, pages 528-530 inclusive, but this admittedly correct principle can not be invoked by plaintiff in this case, since the peremptory instruction could not be sustained alone on proof of the oral (telephone) contract relied on, for, as we have seen, the witnesses contradict each other as to whether it was a completed one.

It is next insisted by defendant that, assuming it competent to consider the writings in this case, they do not evidence or create a binding contract upon defendant. We can not agree with this contention.   If we should accept only the testimony of Mr. Siler, who says that in the telephone conversation plaintiff agreed to give his firm (the defendant) an opportunity to examine the beans before the draft covering their price should be paid, and also accept his testimony that the copy of the contract, as altered by plaintiff on October 23rd, was never returned to defendant, we still have the statement in plaintiff's letter of that date agreeing for defendant to "hold the draft until arrival and examination" (of the beans). This was all that defendant contended for and it was readily agreed to when plaintiff's attention was called to it.   When defendant returned the contract (or both copies as the case may be) to plaintiff on October 23rd, all it

asked was the privilege to examine the beans after their arrival in Owensboro, and it requested an alteration of the contract, or (what was tantamount thereto) an agreement by plaintiff giving it that privilege. Immediately, and on the same day, the letter of plaintiff addressed to defendant contained a stipulation granting the privilege asked for, and whether that stipulation was written in the memorandum of the contract or upon a separate piece of paper can not affect the rights of the parties.

The practice of the case conforming to the views herein expressed, it results that the judgment was proper and it is affirmed.