HOWARD HANSEN, RESPONDENT, v. MIKE J. CIRESE AND JOSEPH C. CIRESE, DOING BUSINESS AS CO-PARTNERS, APPELLANTS.—148 S. W. (2d) 63.

Kansas City Court of Appeals. January 27, 1941.

*John M. Langsdale* and *Roy W. Rucker* for appellants.

*Earle W. Frost* for respondent.

868

SHAIN, P. J.—In this action, plaintiff seeks to recover upon an alleged oral contract with defendants for securing for defendants a Diesel engine.

The plaintiff alleges the contract to have been entered into between himself and defendants doing business as co-partners.

Defendants answered by general denial. Thereafter, and on May 24, 1939, same being day of trial, defendant Joseph C. Cirese, by leave of court, filed an affidavit as follows:

"Joseph C. Cirest, of lawful age, being duly sworn upon his oath states that he is one of the defendants in the above entitled cause and

further states that he is not and has never been a partner of Mike J. Cirese in any manner or at any time stated in the petition herein.

"Joseph C. Cirese

"Subscribed and sworn to before me this 23rd day of May, 1939. "My term expires Nov. 21, 1941.

"Gladys P. Kline, Notary Public."

A jury was waived and trial was before the court and after hearing before the court, the cause was taken under advisement. Thereafter, and on June 7, 1939, and in the June Term of said court, the court found issues for plaintiff for the full sum sued for, to-wit, $500, and entered judgment in accordance. Defendants duly appealed from said judgment.

We will continue to refer to respondent as plaintiff and to appellants as defendants.

Defendants make assignment of errors as follows:

"(1) The Court erred in making a finding and entering judgment in plaintiff's behalf because the evidence wholly failed to sustain the allegations of the petition. The law is well settled that one must recover upon the cause of action stated in the petition.

"(2) The Court erred in entering a judgment in plaintiff's behalf and against defendants because plaintiff's petition alleged that defendants were co-partners and the cause of action, if any was stated in the petition, was against the defendants as co-partners. An affidavit denying partnership having been filed it was necessary for plaintiff to make proof of the partnership, which he wholly failed to do.

"(3) The Court erred in making a finding and entering a judgment for plaintiff in the sum of $500.00 for the reason that there was no substantial evidence upon which to base such finding and judgment.

"(4) The Court should in no event have allowed plaintiff the sum of $500. Taking the most liberal view of the testimony the allowance of such a sum was unwarranted and the amount thereof was excessive."

It will be noted that assignment (4), *supra,* is a mere expression of opinion rather than an assignment of error.

We conclude that such opinion is eliminated by showing of stipulation shown in the record as follows:

"IT IS HEREBY STIPULATED AND AGREED by and between the above named parties, through their respective attorneys, as a part of and as an addition to the foregoing Bill of Exceptions, that at the conclusion of the introduction of all of the evidence in said cause the Court inquired of counsel, 'This is $500.00 or nothing, isn't it?' whereupon counsel for both parties answered in the affirmative."

Defendant urges as to the first assignment as follows:

"(1)  One may not sue upon one theory and recover upon another. This is true even though the evidence may show that plaintiff had a cause of action which was not sued upon."

That one will not be permitted to sue upon one cause of action and recover upon a different cause of action has often been declared by the courts of this State. However, to the end of substantial justice, the trend of judicial opinion, in passing upon matters of departure, is to give consideration of substance as well as form.

In an early case, Cole v. Armour, 154 Mo. 333, it was announced that when one sues upon a special verbal contract, he must recover on such special contract although the evidence discloses a cause of action for money had and received or cause of action *quantum meruit*.

Under the particular special contract in issue in the above case, the reason behind the rule seems to have application. However, in reference to same, the old saying that every tub stands upon its own bottom has significance.

In an opinion by this court, Gunther Bros & Co. v. Aylor, 92 Mo. 161, it is held that cause of action was not changed by an amendment alleging an express contract in lieu of an implied contract. In the course of the opinion, l. c. 166, it is said:

"As the plaintiff alleged performance of their contract, the amendment from an implied contract to an express contract was not a change of the cause of action, as they could sue upon either *quantum meruit* or on an express contract. [Mansur v. Botts, 80 Mo. 651; Stout v. St. Louis Tribune Co., 52 Mo. 342; Williams v. Railroad, 112 Mo. 463; Moore v. Gaus, 113 Mo. 98.]"

The above case and others of same import are discussed in Beebe v. Columbia Axle Co., 117 S. W. (2d) 624.

The distinction between the issues in the above cases lies in the facts pled. In one, the suit is brought upon a specific contract for a specific amount and the plaintiff fails to sustain his action either by failing to prove that such contract was ever made or failing to prove performance of his part if special contract was made; he seeks to recover on proof of performance of service or other valuable consideration than is pled in his petition. In the other class of cases, the petition clearly states the exact consideration and performance for which recovery may be asked on plea of *quantum meruit*. In such case, if the contract be established by competent evidence, the fact that there is evidence on part of plaintiff as to an agreed amount is not such a departure as to defeat recovery. Especially is this so when both parties agree to submit the case on specific amount or nothing.

We hold against defendants on assignment of error (1).

As to assignment (2), the defendants urge point (2) as follows:

"(2)  The plaintiff sued defendants as co-partners. An affidavit

denying the partnership having been filed it was necessary for plaintiff to make proof thereof. This he wholly failed to do."

The question of partnership was raised by affidavit of one of the alleged partners alone. The issue of partnership is often raised by verified answer wherein all defendants are included. The answer in the case at bar is but a general denial and does not arise the partnership issue. The defendant making the affidavit was a witness on behalf of defendants and was neither asked to, and did not testify as to partnership. However, the other defendant was asked and denied that any partnership existed.

The record herein clearly shows that the major contention was as to whether or not any agreement existed and no objections were made to questions asked plaintiff, and no objection made even though the questions and answers were in exact accordance with a situation wherein partnership existed.

Illustrating the above, in direct examination, the following questions and answers appear:

"Q. I will ask you to state if you are acquainted with the defendants, Mike J. Cirese and Joseph G. Cirese? A. Yes, sir.

"Q. When did you first become acquainted with them? A. In the spring of 1937.

"Q. Will you state under what circumstances that acquaintanceship arose? A. I called at their place at 3400 East Ninth. Others of our people had called on them before, and I just started calling on them about that time.

"Q. Did you call on them in connection with your business? A. Yes, sir.

"Q. Did you solicit them for the purchase of Diesel engines? A. That is right.

"Q. Will you state the circumstances? A. They were operating a number of small gas engines, and I brought to their attention that you could operate an oil engine more economically in their operation than had been for gas engines. And during these visits there was talk about the possibility of the sale of machinery to others they were selling, I think mostly small gas engines to different users, so I called their attention that they might probably profitably handle some bigger engines and I would be glad to sell them through them."

Again as follows:

"Q. Had you up to this time told them where that unit was located? A. No.

"Q. Had you told them what it could be purchased for? A. Yes, I told them that it could be bought for $2,000.

"Q. And you knew that because of the prior transaction? A. Yes, sir.

"Q. Now, who did you talk to in connection with this matter,

which of the Cireses, or did you talk to both of them? A. Both of them.

"Q. Where did you talk to them? A. At their place on Ninth Street.

"Q. What next happened in reference to this transaction? A. Well, they eventually decided that they would consider the use in their own plant and supplant some of their gas engines, and that this small engine would probably suit them pretty well."

The plaintiff testified that after suggesting the deal to defendants, it was agreed that they could deal direct with the owners of the machine. The plaintiff testified that he had phoned to the party in charge of the machine and had secured the price asked for same.

On cross-examination, the following questions and answers appear:

"Q. You say you talked to Rathert at least four times on the telephone? A. I think so.

"Q. And you paid the toll? A. Yes, sir.

"Q. You didn't reverse the charges? A. No.

"Q. And he priced it to you at $3,000, didn't he? A. He said $2,000.

"Q. And you might get it for a little less? A. No.

"Q. That was rock bottom? A. That was the best they would do, yes.

"Q. When you told Joe Cirese about it and Cirese knowing of the kind of deal you attempted to put over on Leeds Cirese said 'I want to talk to the owner myself,' didn't he, to see what price he could get this engine at? A. He said something like that, he said he thought he might buy it cheaper."

The above questions are at least not indicative of the fact that the defense was strenuously defending on the theory of no partnership. The fact that defendants announced to the court submission on $500.00 or nothing does not show persistent injection of partnership issue. However, we proceed upon the conclusion that the issue of partnership is in the case, at least in a homeopathic dose sense.

To the determination of the issue, we include herein further questions and answers in testimony of plaintiff in direct examination as follows:

"Q. Now, before the acceptance of that offer did you have any conversation with the Cireses either or both of them relative to your compensation? A. Yes, as I told you, the original arrangement was that they would pay me a profit for being permitted to carry on their own negotiations and on the way back from Junction City they asked what I wanted on the deal, and I answered that I would be willing to accept half of what they considered fair on this other deal of $1,000, and they said that was all right. I indicated to them that $500 would be the amount I would expect of them.

"Q. Was that conversation with both of the Cireses? A. Yes, they were both along driving back from Junction City."

On cross-examination, the following appears:

"Q. Mr. Hansen, you testified about having had an agreement on the way back from Junction City about a commission of $500, with whom did you have that agreement? A. With Joe or Mike.

"Q. Which one? A. I didn't know there was any difference, I thought they were both—

"Q. (interrupting). But who was doing the talking? A. Both.

"Q. Well, who said they would pay you $500? A. They both agreed to it.

"Q. What was said, tell me the conversation? A. Mike says, 'Hansen, what do you expect out of this deal up here?' I said, 'I will tell you what I will do, I will just take half of what you were going to take on the Leeds deal, that will be all right, wouldn't it?' and they both answered that would be all right.

"Q. What do you mean they both answered, what was the answer? A. Well, as I say, they asked me what I wanted.

"Q. I understand that, but when you said 'I am going to take half of what you wanted on the Leeds deal, wouldn't that be all right' what did Joe say? A. I spoke to both of them, they both said 'Yes.'"

Before passing upon the partnership issue, we deem it best to state the position taken by defendants on assignment of error (3). Under point (3), defendants urge as follows:

"(3) The evidence wholly fails to show any meeting of the minds of the parties to any agreement or contract and this being true plaintiff is not entitled to recover. Citation of authorities is unnecessary."

In passing upon the issues presented in this case, we must proceed upon the theory that it is the duty of this court to uphold the judgment of the circuit court if for any reason consistent with the law and the facts we can do so. In this case, the Judge was the trier of fact. He saw and heard the witnesses and observed their demeanor on the stand and it was in his discretion to believe or not believe the testimony of any witness. No request was made to the court and no declarations of law or findings of facts appear in the record. We conclude that there are ample facts in evidence to justify the trial court to conclude that a partnership relation existed, especially so as to the transaction at issue herein. There is evidence that shows that both of defendants acted together in the negotiations and that both agreed to pay plaintiff the sum of $500 for his part in the transaction. It follows that there was a meeting of minds, a privity of contract. We hold against defendants on assignments two and three. We have above stated conclusions adverse to defendants on assignments one and four.

Judgment affirmed. All concur.