HUGH O. COOLEY and STELLA D. COOLEY,

*Plaintiffs and Respondents,*

vs.

WILLIAM F. FRANK and PAULINE FRANK,

*Defendants and Appellants.*

(No. 2481; September 11, 1951, 235 Pac. (2d) 446)

438

442

For the defendants and appellants the cause was submitted upon the brief and also oral argument of R. Lauren Moran of Riverton, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of H. S. Harnsberger of Lander, Wyoming.

## OPINION

BLUME, Justice.

In this case plaintiffs sought to recover from appellants judgment for $848.10 and interest by reason of hay sold and delivered to defendants. It appears herein that on July 9, 1947, the parties entered into a written contract whereby the plaintiffs sold to the defendants and appellants herein certain lands in Fremont County, Wyoming, together with certain leaseholds, and together with 50 tons of hay for the consideration of $28,000 reserving to grantors oil and gas rights in the land. An option was given appellants, as hereinafter more fully mentioned, to purchase 50 tons additional hay from the plaintiffs at the market price. The claim of plaintiffs herein relates to such additional hay. Appellants denied the allegations of the plaintiffs, except as to the purchase of the lands as above mentioned, and the fact that 50 tons of hay were to be delivered as part of the purchase price. They also filed a cross-petition containing three different causes of action. The trial court allowed nothing on the cross-petition, and gave judgment to the plaintiffs in the sum of $771.00, together with interest in the sum of $103.18, a total of $874.18 and the defendants in the action, generally referred to herein as the appellants, have appealed to this court. We shall first consider the causes of action set forth in the cross-petition, and shall consider the cause of action of the plaintiffs thereafter.

## 1. EFFECT OF AMENDED PLEADING, ETC.

The defendants filed an answer and a cross-petition on February 10, 1949. The cross-petition contained three causes of action. In the first one, the appellants pleaded that plaintiff, well knowing the contrary, represented to appellants that the house on the premises was in sound condition, whereas in fact the floors were rotten, and that appellants bought the premises relying on the representations so made. For a second cause of action defendants claimed damages by reason of operation on the land exploring for oil and gas. In the third cause of action defendants claimed $80.40 by reason of taxes assessed for weed control. Plaintiffs demurred to the first and third causes of action contained in the cross-petition. The court sustained the demurrer to the first cause of action relating to damages by reason of the rotten floors in the house, and defendants now assign the ruling of the court as error.

The order of the court gave defendants 14 days in which to amend their cross-petition. They availed themselves thereof, and as a first cause of action in their first amended cross-petition, they again claimed damages by reason of exploration on the land for oil and gas. As a second cause of action, they again claimed $80.40 by reason of taxes for weed control. The first cause of action in their original pleading was entirely omitted. There is no intimation in the record that defendants stood on their pleading in that connection. In the final judgment, rendered January 19, 1950, there is a finding that "the defendants shall take nothing by reason of their cross-petition." There was only one cross-petition then before the court, namely the amended cross-petition. The final judgment was approved as to form by counsel for the defendants. It thus appears that there never was any final judgment as to the cause of action relating to the rotten floors of

the house above mentioned. We have held that an appeal will not lie on an order sustaining a demurrer, inasmuch as such order is not a final judgment permitting an appeal. Bock vs. Nefsy, 29 Wyo. 33, 207 P. 1008, and cases cited.

There is another reason why the cause of action as to the condition of the house is not before us. We held in Arp & Hammond Hardware Co. vs. Hammond Packing Co., 33 Wyo. 77, 236 P. 1033 and Wyo. Trust Co. vs. Montgomery, 38 Wyo. 307, 267 P. 77 that a party availing himself of the right to amend waives any error in sustaining a demurrer. The point was considered at some length in the case of Moshannon Nat. Bank vs. Iron Mountain Ranch Co., 45 Wyo. 265, 18 P. 2d 623. While in that case leave to amend was asked and given, the principle involved is, we think, the same. We quoted in that case from Berry vs. Barton, 12 Okla. 221, 71 P. 1074, where it was said in part: " 'In order to take advantage of the ruling on a demurrer when it is sustained, the party must stand upon his pleading held to be defective, and not amend. * * * When he elects to amend he abandons, not necessarily his view of the law as urged against the demurrer, but that particular pleading, and it is just the same as though it had never been filed; and a party who expressly abandons a pleading cannot at his own election, without permission of the court, urge it as an existing pleading in the case.' "

The same result is reached under another line of authorities. The amended cross-petition is complete in itself. It is stated in 71 C.J.S. 716-718 as follows: "An amendment which is complete in itself and does not refer to, or adopt, the prior pleading, ordinarily supersedes it and the prior pleading ceases to be a part of the record for most purposes, and has been held to be in effect abandoned and, likewise, has been held to be in effect withdrawn as to all matters not restated, and to

become functus officio. Unless placed in evidence the original pleading is no longer in the case, with the result that the subsequent proceedings in the case are to be regarded as based on the amended pleading, which will not be aided by anything in the prior pleading, and any motion addressed to the original pleading, and any ruling of the court with relation to the sufficiency of the original pleading, is not properly in the record. On the other hand, an amended pleading does not supersede the original pleading where it is evident that it is not designed as a substitute therefor or intended to take its place, as where it refers to its allegations, or expressly reaffirms them, or merely elaborates certain of them, or merely augments the original pleading by additional allegations, and in such cases the original pleading and the amendment are to be construed together." The amended cross-petition makes no reference whatever to the condition of the house and the misrepresentation in that connection. There is no intimation therein, which could easily have been made, that defendants continued to rely on the allegations in that connection. It would seem to be clear that the cause of action in that connection was abandoned.

## 2. WEED-CONTROL TAX.

Under the first cause of action in the amended cross-petition, appellants asked damages to the land which they bought by reason of exploring for oil and gas. This cause of action was compromised between the parties involved, and will not be considered any further.

Under the second count of the amended cross-petition defendants sought to recover from the plaintiff the sum of $80.32 on account of weed-control tax, paid by them in 1949, and shown on the tax receipt of 1948. It is admitted that this receipt is for the taxes of 1948, but it is claimed that the weed-control tax shown thereon is an exception. Defendants sought to show by the as-

sessor of Fremont County "that this assessment was made for weed-control tax assessed and due for 1947, and that because of the method of assessment followed by Fremont County, Wyoming, this is shown on the receipt for the year 1948."

There is nothing in the contract entered into by the parties or warranty deed in the record that refers to the payment of taxes. The deed was executed in July, 1947. In the absence of any agreement to the contrary the taxes for that year were to be paid by the grantors of that deed. Section 32-607, Wyo. Comp. St. 1945. But, of course, the grantees in the absence of an agreement to the contrary were compelled to pay taxes assessed and levied against the property thereafter. The best evidence as to when the weed-control tax was assessed and levied would be by the books of the county. These books were not introduced in evidence. Hence there is no competent testimony in the record that the so-called weed-control tax was a tax of 1947. It is probable that the assessor had in mind the provisions of Section 34-212, Wyo. Comp. St. 1945, which provides as follows: "The Board of County Commissioners shall annually determine the amount of such warrants drawn on the general fund for the purpose of this Act (§§ 34-201—34-239), and the succeeding year, shall levy a tax for the purpose of insect pest, plant disease or weed control sufficient in amount to reimburse said general fund for the money so paid out on such warrants, which said tax shall be levied upon all the property in the county and shall not exceed one mill on each dollar of assessed valuation. If there be no money in the general fund with which to pay such warrants, they shall be registered and bear interest in the same manner as other county warrants, but in such case the interest shall be computed and added to the amount for which such tax is levied." Under this weed control statute the expenses

incurred thereunder and paid out of the general fund in any one year are not sought to be reimbursed until the following year, and that by a tax levied in the latter year. Obviously a tax does not become a tax until duly levied. So that while in this case the amount of $80.32 was expended for weed control in 1947, no tax was levied therefor until 1948. It became a tax for 1948 and not for 1947. The parties are presumed to know the law, and in the absence of an agreement to the contrary there was no duty upon the plaintiffs to pay the amount mentioned in this cause of action of the cross-petition.

3. ATTORNEY AT LAW AS COMPETENT WITNESS.

We shall accordingly proceed to consider the cause of action of the plaintiffs herein. Numerous errors are assigned in that connection. We shall consider only those which we deem of sufficient importance to be noticed. We may, however, mention specially that appellants offered Mr. F. B. Sheldon, an attorney at law, as a witness. Counsel for appellants makes an elaborate argument in his brief on that subject, so we should perhaps not let the matter go wholly unnoticed. The witness Sheldon was employed to draft some papers in connection with the land sale—showed to all the respective parties—and examine the title. Upon objection made, the court held that he was an incompetent witness, because of the statute which forbids an attorney at law to testify to confidential communications. The record before us discloses no trace of any confidential communication of any kind, and the court was in error in holding the witness to be incompetent. The trouble is that we do not know what the testimony of the witness would have been. No offer of proof was made. Hence, we cannot say that the ruling of the court was prejudicial error. Wyo. Investment Co. vs. Wax, 45 Wyo. 321, 339, 18 P. 2d 919, and cases cited.

## 4. VARIANCE BETWEEN PLEADING AND PROOF.

Plaintiffs allege in their petition that on or about the 9th day of July, 1947, they entered into a written contract with defendants for the sale to the latter of certain real estate located in Fremont County, Wyoming; that as part of the contract there was an agreement with reference to certain hay to be sold to the defendants; that the agreement in that respect was as follows: "As a part of the consideration paid by the purchasers, the vendors covenant and agree to deliver to the purchasers fifty (50) tons of hay, properly stacked and measured according to the state rule, simultaneously with the delivery of the above described premises. They further covenant and agree to sell and deliver an additional fifty (50) tons of hay to the purchasers providing purchasers elect to purchase the same by notice in writing delivered prior to October 1, 1947, and pay therefor the market price thereof as of October 1, 1947. The purchase price of said hay will be due within 30 days thereafter. The vendors will have the right to remove all hay remaining on said premises belonging to them at any time on or before April 1, 1948." Plaintiffs in their petition continued: *"That pursuant to the terms of the said contract* and on or about the second day of January, 1948, plaintiffs delivered to the defendants 102.05 tons of hay; that said hay so delivered as aforesaid was properly stacked and measured according to the state rule and consisted of clean timothy and clover. That thereafter, by mutual agreement and consent between the plaintiffs and defendants, plaintiffs took 13.50 tons of said hay from said premises which should be deducted from the total of 102.05 tons of hay delivered as aforesaid on about January 2nd, 1948." (Italics supplied). There is no dispute herein as to the 50 tons of hay that were sold along with the land. The

dispute herein is as to the additional 50 tons of hay agreed to be delivered as mentioned in the contract. No written notice to purchase additional hay was given on or before October 1, 1947 or at any other time. Hugh O. Cooley, one of the plaintiffs herein, testified without objection that he and the defendant, William F. Frank, had a conversation sometime in November, 1947, in regard to these additional tons of hay; that at that time Mr. Frank agreed to buy the hay, giving a check for $300.00 as part payment, however marking on that check that the hay was to be paid at the rate of $15 per ton which was not the proper price and for that reason the check was later returned; that when he delivered possession of the land on January 2, 1948, he left thereon 102.05 tons of hay which he had measured about October 7, 1947, and that no payment had been made for the additional hay. We might say in that connection that Mr. Frank also testified to giving the check of $300 above mentioned sometime in November, 1947, and that he intended to buy the additional hay at that time. At the close of the plaintiff's evidence in chief, counsel for the defendants moved for judgment on the petition of the plaintiff on the ground and for the reason that the evidence necessary to the cause of action of the plaintiff as pleaded has not been made out by the testimony; that the pleading is on an express contract; that the express contract requires proof of furnishing 50 tons. of hay; that it requires written notice prior to October 1, 1947; that it requires proper stacking and measurement; that there is absolutely no testimony concerning any written notice by the defendant; that there is no testimony concerning the method of measuring and the method of testing the hay. Mr. Oeland, counsel for the plaintiffs stated in that connection: "Court please, the petition is based upon the sale and delivery of the hay to the defendant and the reasonable value of the hay and the market price of the hay al-

leged in the petition, and the fact same has not been paid." He was clearly mistaken, since the action was on the written contract alleged in the petition, as shown by the portion of the pleading which we have italicized.

Counsel for appellant claims, in short, that there is a fatal variance or failure of proof between the plaintiff's petition and the proof offered in the case. Our statutes in that connection are about the same as the statutes of the various Code states. The subject is considered at length by Pomeroy, Code Remedies (5th Ed.) Section 447 and subsequent sections. Section 3-3201, Wyo. Comp. St. 1945 provides as follows: "No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits, and when it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended, upon such terms as are just." Section 3-3202, Wyo. Comp. St. 1945 provides as follows: "When the variance is not material the court may direct the fact to be found according to the evidence, and may order an immediate amendment without costs." Section 3-3203, Wyo. Comp. St. 1945 provides as follows: "When the allegation of the claim or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it shall not be deemed a case of variance within the last two (2) sections, but a failure of proof." See Johnston vs. Vukelic (Wyo.) 213 P. 2d 925; 71 C. J. S. 1104. The question, accordingly, is whether there was a variance which was without prejudice or whether there was a total failure of proof.

The line between failure of proof and variance seems,

judging from the authorities, at times rather tenuous. The situation before us may be regarded from two different aspects. The conversation in November, 1947, may be regarded as creating an entirely new, oral contract, inasmuch as the written contract—in view of the fact that no notice as provided was given—was not enforceable by either party. It appears to be generally held as stated in 17 C. J. S. 1208, and 13 C. J. 753 that: "If * * * a plaintiff declares on a written contract, he cannot, * * * recover on proof of an oral contract, or on one partly oral." And in 17 C. J. S. 1215, Section 577, it is said: "If plaintiff declares on a contract as originally made, and his evidence reveals that the original contract has been superseded or materially modified by a valid subsequent agreement, the variance will be fatal to a recovery. So, where a written contract is declared on, the party will not be allowed to prove a subsequent parol modification." See also Pomeroy's Code Remedies (5th Ed.), Note, page 720. It would seem, accordingly, that if the November conversation be regarded as above mentioned, the trial court should perhaps have sustained the motion of appellants. On the other hand the written contract may be regarded as still in effect in its essential elements, with the required notice waived or ignored. An immaterial change cannot be said to be of importance. Wolff vs. Cloyne, 156 Cal. 746, 106 P. 104; See 17 C. J. S. 1215, cited supra. In the case of Johnson vs. De Waard, 113 Cal. App. 417, 298 P. 92, the court stated among other things: "When a cause of action is based on one contract, and the proof establishes an entirely different contract, the case is one of failure of proof, but, when the contract pleaded and the contract proved are essentially the same, the judgment may stand if the proof is sufficient. * * * If there was no substantial or material difference in the terms and conditions between the oral agreement and the written contract, defendant was not prejudiced." In the

case of Otten vs. Spreckels, 24 Cal. App. 251, 141 P. 224, the court stated in part: "The action, as seen, is for the breach of a written contract, and the proof shows an oral agreement. It would perhaps have been more regular had the plaintiff amended his complaint by setting up the oral agreement * * *. But it cannot be said that the allowance of proof of the oral agreement was prejudicial to the defendant, for these reasons: (1) There is, as before stated, no material or substantial difference in terms and conditions between the oral agreement and the written contract. The only difference between the two lies in the fact that one is in writing and the other is not." etc. In the case of Rogers-Siler Grocery Co. vs. Pickrell-Craig Co., 190 Ky. 545, 227 S.W. 991 plaintiff declared upon a contract resting in parol, but proved a written contract. The court said in part: "If it develops in the proof that the contract was in writing, but its terms and obligations are substantially the same as those declared on as resting in parol only, it is difficult to see how the one denying the existence of the contract can in any manner be misled to his prejudice." It is said in 37 C.J.S. 732: "As sometimes stated, the rule is that a written contract cannot be modified by parole as to those matters required to be in writing under the statute of frauds, but that those portions of a written contract which the statute does not require to be in writing may be orally modified if they constitute a distinct and severable part of the contract." The requirement of a written notice prior to October 1, 1947, is, we think, a severable portion of the contract. And the text stated is, we think, equally applicable to determine the question as to whether or not there has been a material variance between pleading and proof. Along the same line is the statement in 71 C. J. S. 1103 to the effect that the "rule that proof must correspond to allegation applies only to such allegations as are in themselves essential to the claim or defense," etc. As already

indicated the requirement as to notice may be regarded as waived or ignored, and in that respect the written contract may be regarded as modified, leaving, however, the essential requirements of a contract, for the goods are the same and the price is the same. While counsel for appellants at the beginning of the testimony of Hugh O. Cooley, one of the plaintiffs, had in mind that plaintiffs, in order to recover, were required to prove the contract exactly as written, yet Cooley's testimony above mentioned was in fact admitted without objection, and appellant introduced much testimony to meet it, most of it relating to the quantity of the hay delivered, and the market price thereof. It has been held that: "Where a good cause of action appears from proofs received without objection, a variance between the allegations of the complaint and the evidence is not material." See 71 C. J. S. 1102, Note 69. Considering these various matters, we hardly think that we are justified in holding that the allegation of plaintiffs remained unproven "in its general scope and meaning" as mentioned in Section 3-3203, supra. See Winn vs. Taylor, 98 Ore. 556, 190 P. 342, 194 P. 857; Wehrung vs. Portland Country Club, 61 Ore. 48, 120 P. 747, 749; Hansen vs. Cirese, 235 Mo. App. 866, 148 S.W. 2d 63; Cox vs. Louisiana Dept. of Highway (La. App.) 25 So. 2d 824; Kakos vs. Byram, 88 Mont. 309, 292 P. 909; Johnson vs. Johnson (Wyo.) 229 P. 2d 918. Defendants did not claim or prove that they were prejudiced by reason of any variance. We think accordingly that the court did not err in overruling the objection made by counsel for appellants above mentioned.

## 5. DELIVERY AND ACCEPTANCE OF HAY.

A great deal on this subject is contained in the brief of counsel. We cannot follow his various excursions in that connection. The facts are comparably simple. Cooley, on October 7, 1947, measured the hay, consist-

ing of 12 stacks, and amounted as he claimed, to 102.05 tons. As already stated the parties agreed in November, 1947, that the defendants would take the additional hay mentioned in the written contract hereinbefore mentioned. According to the testimony of Cooley the price agreed on was $18.00 per ton, as constituting the market price. That is corroborated by the agreement of arbitration hereinafter mentioned. No agreement as to the quantity of this additional hay, then on the land, was reached. Possession of the land on which the hay was located was given January 2, 1948. No agreement as to the quantity was then reached. Appellants had the hay measured on or about January 10, 1948, by Albert Hornecker, assisted by Roy Iiams. They measured the hay according to the state rule, and arrived at the conclusion that all the hay on the premises, namely 12 stacks, including the 50 tons which went with the purchase of the land, consisted of a total of 74.04 tons. Cooley was not satisfied with that. So about January 11, 1948, the parties agreed that they would take two stacks, one to be selected by Cooley, one by Frank, and have them weighed, so that thereby the quantity of all the hay, consisting of twelve stacks, might be determined. According to Cooley, the two stacks turned out to consist of more hay than he had ascertained by his measurement of October 7, 1947, the two stacks weighing as Cooley claimed 13.50 tons. Cooley kept these two stacks, so weighed, leaving less than 50 additional tons of hay, but so far as we can tell from the record no objections in that connection were raised by the appellants so we think that that matter may be disregarded herein. Frank was not yet satisfied. So the parties agreed to enter into an arbitration agreement on January 21, 1948, and the arbitrators determined that the ten stacks of hay still left on the land consisted of 76.32 tons leaving, after deducting the 50 tons which went with the purchase of the land, the

quantity of 26.32 tons to be paid for by the appellants at the rate of $18.00 per ton. For some reason not disclosed by the record, the result of this arbitration agreement was set aside. So we have the present controversy.

Counsel for appellants contends that there was no delivery or acceptance of the hay in question. We think that counsel is mistaken. It is ordinarily, and in the absence of a contract, or waiver, the duty of the seller to deliver the property. 55 C. J. 304. But the seller in that connection cannot be expected to do more than the nature of the transaction requires. There may be symbolic or constructive delivery. 55 C. J. 361. At times the property may be already in the possession of the buyer, and in such case, nothing further needs to be done, except that the buyer must manifest his intention, by conduct or otherwise, that he accepts it. 55 C. J. 366. That also is the rule of the civil law as stated in Code Napoleon, Section 1606. In the case at bar, the contract doubtless implied that the delivery should be made at the time when possession of the land was given, namely on January 2, 1948, and that the delivery should be on the land purchased by the buyer. Possession of the land was given at that time. The hay was located thereon. Physical possession and control of the hay was given to appellants, so that delivery thereof may at least be presumed. 55 C. J. 312. It was substantially as effective as the delivery of a key in symbolic delivery. The 12 stacks of hay which were to become the property of appellants were identified, for appellants themselves had each of the stacks measured by Hornecker and his assistant. Furthermore, on January 21, 1948, the parties, as already mentioned, entered into an arbitration agreement which recites among other things: "WHEREAS, by the terms of said contract, possession of said premises was to be delivered to

the purchasers on January 2, 1948, and WHEREAS, vendors have delivered possession of said premises to purchasers under said contract, together with ten stacks of hay thereon and a dispute has arisen between said parties as to measurement of said hay and the amount of hay so delivered." This would seem to settle the question as to whether or not the additional hay in question here (aside from that which was baled as heretofore mentioned) was actually delivered. We see no reason why the contract of arbitration should not be admissible in evidence to show delivery and we have not been cited to any authority to the contrary. And the circumstances in this case, we think, show that the buyer accepted the hay. Section 41-104 (3), Wyo. Camp. St. 1945 provides: "There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods." Section 41-308 of the same statutes provides that: "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them," etc. Here the buyer had the hay measured; he agreed to have two stacks weighed; he entered into agreement of arbitration, agreeing that he would pay for the quantity of hay found by the arbitrators. These facts show, we think, acceptance of the hay. In fact the only dispute between the parties appears to have been as to the quantity of hay contained in the 12 stacks involved herein.

## 6. ADMISSIBILITY OF WEIGHTS AND MEASURES.

The witness and plaintiff Hugh O. Cooley testified that he measured the hay in question on October 7, 1947, and found it to be 102.05 tons. Frank, one of the defendants, was not satisfied with this calculation and as heretofore stated it was agreed that Cooley and

Frank should each pick out one of the stacks, and have these stacks baled and weighed, so as to determine as to whether or not the measurements of any of the stacks made by Cooley were excessive. Q. You say you weighed some of that hay? A. Two stacks, yes. Q. Have you compared the amount of hay arrived at by the measurement taken by you on October 7, 1947 and the amount of hay found to be in these two stacks by weight? A. Yes, sir. Q. Will you tell the court the difference between these two amounts, and compare them? A. Well, the October measurement on the two stacks was 13½ tons, and the January baled weights is 15¾ tons and 60 pounds."

On rebuttal Cooley again testified on this subject and to elucidate his previous testimony, his counsel sought to introduce the weights of the two stacks of hay, these weights appearing on slips of the Land Feed and Supply Co., some of them being marked, where the weigher was mentioned as "W. C.", some of them as "W. H. F.", and no weigher is indicated on some of them. These slips of weight were objected to as irrelevant and immaterial. That objection was not well taken. The parties took two stacks at random. They showed that the measurement of Cooley was too low as to these stacks, giving rise to the further inference that the measurement as to the remainder of the stacks was probably in the same proportion, or at least that the measurement of Cooley as to all the stacks was not execessive. The further objection was made that "no proper foundation has been laid, and as offered they constitute hearsay." A witness must have knowledge of the facts to which he testifies. 70 C. J. 83. It is true that at 70 C. J. 86 it is said: "It is not necessary that the witness' knowledge of the fact to which he testifies should have been obtained in any particular manner; and so the result of the weighing or measuring may be proved by one who

saw the acts performed, although he did not himself perform them or participate therein." But this rule is not applicable in the case at bar. The witness Cooley testified that he took only some of the hay to the weigher himself. He did not testify that he saw any of it weighed; or that he saw the figures put down by the weigher, and that they were correct. In short, the witness was incompetent to testify that the weights shown by the slips were the weights, let alone the correct weights of the two stacks of hay which were baled. This testimony was pure hearsay. As we said in Davis vs. Graham, 31 Wyo. 239, 256, 225 P. 789, to permit the weights to be established in such a manner would "undoubtedly, ultimately lead to the grossest of frauds." See also 31 C. J. S. 929, note 27. The slips of the weights consisting of Exhibits 5-1 to 5-9 should not have been admitted in evidence.

Courts, including this court, have been rather liberal in connection with the admission of irrelevant and incompetent testimony in a trial to the court without a jury, and generally hold it to be not prejudicial. Williams vs. Yocum, 37 Wyo. 432, 263 P. 607; Russell vs. Curran, 66 Wyo. 173, 206 P. 2d 1159. But, of course, there is a limit to that. The rule is stated in 3 Am. Juris. 505 as follows: "In equity cases and in an action tried before the court without a jury, the judgment will not be reversed on appeal because of the admission of incompetent evidence on the trial, unless the record shows affirmatively that the action of the trial court was influenced by such evidence. The presumption, in such a case, is that the incompetent evidence was finally disregarded by the court, and that the trial judge considered only the competent evidence adduced, in the absence of anything in the record that shows affirmatively that the action of the trial court was influenced by the incompetent evidence. This presumption, how-

ever, loses its force when it reasonably appears from an inspection of the record that the incompetent testimony did influence in some degree the action of the trial court in rendering the particular judgment." The opinion of the trial court found in the record shows, we think, clearly that the trial court was influenced by the admission of the foregoing incompetent testimony, and hence was prejudicial. It could not be otherwise under the circumstances in this case. Hugh O. Cooley was the only person who testified that the quantity of hay left o nthe premises on January 2, 1948, consisted of 102.05 tons. He was one of the plaintiffs and naturally prejudiced in his own favor. So far as the record shows no one assisted him in measuring the hay. He did not testify that he measured it according to the state rule. See Section 39-1011, Wyo. Comp. St. 1945. Hornecker and his assistant found the hay to consist of approximately 74 tons of hay. They were farmers and neighbors. There is no indication of their dishonesty or prejudice. The discrepancy in the amount of hay is rather startling, consisting of a difference of more than 25%, which is increased to a considerable extent, if the slips of weights are correct. The quantity of hay as found by the arbitrators is considerably below that claimed by Cooley. Still the trial court disregarded all the testimony except that of Cooley, which can be explained only by the admission in evidence of the slips of weights. Hence, we are somewhat at a loss to know what to do. The dispute between the parties has now extended over a period of more than three years. It should be ended if that can be done within a fair measure of justice. In view of the fact that there can be no absolute mathematical certainty as to the quantiy of hay involved herein, we have concluded that instead of reversing the case unconditionally, we should do so conditionally. As already stated, the price of the hay according to the testimony of Cooley and according to the

arbitration agreement was to be $18.00 per ton. The trial court allowed him at the rate of $20.00 per ton. We can see no good reason for that. If plaintiffs within thirty days after this decision is handed down will file in this court a consent to accept judgment as of January 19, 1950, of the sum of $533.52 (being for 26 tons at $18.00 per ton, plus interest) that is to say consent to the reduction of the judgment herein of $340.66, then the judgment herein will—as so modified—be affirmed; if no such consent is filed, the judgment herein will be reversed and remanded for a new trial, the parties then to have the right, if they wish, to amend their pleadings. An order to the foregoing effect will be entered.

KIMBALL, C. J. and RINER, J. concur.