Duane L. HARNED and Velma Harned, Appellants (Defendants below),

v.

CREDIT BUREAU OF GILLETTE, a corporation, Appellee (Plaintiff below).

No. 4196.

Supreme Court of Wyoming.

Sept. 5, 1973.

R. Tim Watt, Gillette, for appellants.

Rex O. Arney of Redle, Yonkee & Arney, Sheridan, for appellee.

Before PARKER, C. J., and McEWAN, McINTYRE and GUTHRIE, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

The plaintiff, as assignee of an open account, sued the defendants for the alleged balance due and recovered judgment in the district court, sitting without a jury, against the defendants in the amount of $253.98 and costs, from which this appeal was taken. The defendants argued that the trial court erred in permitting the plaintiff to introduce into evidence a recapitulation of the account of the defendants.

Defendants had been customers of Petrolane-Wyoming Gas Service of Gillette, Wyoming, which was plaintiff's assignor, from September 1967 through July 1970. Petrolane sold propane gas and furnished a tank to the defendants during that period, and the plaintiff alleged that the defendants had not paid for all the gas and services rendered, while the defendants maintained that full payment had been made. Plaintiff, over the objection of defendants, introduced into evidence a recapitulation showing the various charges made to the defendants. The defendants introduced 23 cancelled checks made payable to Petrolane, which defendant-Mr. Harned testified paid every statement which he had received from Petrolane. The last check of the defendants paid for gas delivered to them on July 23, 1970, which was the last service rendered to them by Petrolane.

When Petrolane delivered gas to a customer such as the defendants there was an invoice made out by the truck driver which showed the gallons of gas delivered. Apparently the invoice was made in quadruplicate. One copy was given to the customer at the time of delivery; one copy was retained in the office of Petrolane at Gillette; one copy was sent to Petrolane's office in Long Beach, California; and one copy was sent to the customer during the regular billing procedure. When the copy was received at Petrolane's Long Beach office the amount due was recorded, which amount then appeared on a computer printout which the plaintiff referred to as a "hot sheet." This computer printout was received monthly by the Gillette office and became a permanent record in that office.

The plaintiff's principal witness was Joyce Lively who, at the time of the trial, was credit manager and in charge of all bookkeeping for Petrolane at Gillette. She started to work for Petrolane July of 1971. She testified she had prepared the recapitulation sheet, which was plaintiff's exhibit 2, from the information received from the "hot sheet." Objection was made to the introduction of this exhibit on the grounds that it was not the best evidence. We think the objection was well taken.

 The best evidence rule requires that the original or primary evidence of an obligation be produced, and no evidence which is secondary or substitutionary shall be received if the original evidence can be had. The terms of a document must be proved by production of the document itself in preference to evidence about the document. Cooley v. Frank, 68 Wyo. 436, 235 P.2d 446, 450. See the discussions at 32A C.J.S. Evidence § 777, p. 93, and 29 Am.Jur.2d Evidence § 448, p. 508. Like all rules it has exceptions born of practical considerations. See the discussion at 2 Jones on Evidence, Best and Secondary Evidence, Ch. 7, p. 83 (6th Ed.). Here the summary sheet would have been admissible had the plaintiff produced the original records in court so that they were available to the defendants for the purpose of cross-examination. Bolling Company v. Barrington Company, Mo.App., 398 S.W.2d 28 at 31; Flame Coal Company v. United Mine Workers of America, 6 Cir., 303 F.2d 39, 97 A.L.R.2d 1136, cert. den., 371 U.S. 891, 83 S.Ct. 186, 9 L.Ed.2d 125. Here the plaintiff's witness testified that although the original invoices were available she did not review them, and no attempt was made to produce or explain the failure to produce the original invoices in court.

There were 28 charge invoices contained in the summary made by plaintiff. The defendants had copies of 17 of the invoices, which they introduced. Only 11 invoices would have had to be produced by the plaintiff and this does not seem a burdensome requirement. Apparently the de-

fendants did not know before trial what the plaintiff's proof would be and they were not aware of plaintiff's exhibit 2. While it could be argued that the defendants through discovery could have determined what the plaintiff's proof would be, the plaintiff nonetheless had the burden of proving its case. In any event, this case demonstrates the practical need for a meaningful pretrial conference. It may well be that defendants had not paid for gas furnished them, and if they had been shown the invoices which were alleged to be unpaid, and which they may have signed as having received, they would of course have had no alternative but to acknowledge the debt. While the amount sued for is rather nominal, the defendants were entitled to know what they were being expected to pay. It is a frightening prospect to think that a person could be sued for services rendered and have the plaintiff base its claim solely upon a recapitulation of computer printout sheets.

Plaintiff's principal witness did not begin work for Petrolane until a year after the defendants ceased to be customers of Petrolane, and had worked for the company only a month when the lawsuit was tried. She did not know what the company policy was as to discounts, tank rentals, or, apparently, billing procedures. Yet the defendants were charged $60 for tank rental even though defendant-Mr. Harned testified that his agreement with the manager of Petrolane was that he would not be charged a rental fee. Service charges or carrying charges were shown on the recap sheet while there was no showing as to the basis of such charges. The defendant-Mr. Harned testified that he received no billings for these items, and the plaintiff made no showing or even contended that the defendant had been billed. While these issues may not have a direct bearing upon the case they tend to show the dilemma of a person who, a year after he ceases doing business with the company, is suddenly confronted with a lawsuit alleging that full payment had not been made. It might also tend to support the defendants' contention

that they had paid each statement received. There were some invoices which showed on their face that the defendants were to receive a discount when none was given by Petrolane. The witness testified that she knew nothing about discounts, and yet it was obvious that discounts had been given to defendants. This witness further testified that at the time of the trial the company policy was to refuse service to customers who were not current in their payments unless they paid cash for gas when it was delivered. According to the company's own recapitulation sheet the defendants were not current for almost two years. This might then be a circumstance tending to support the defendants' contention that they did not owe anything to plaintiff's assignor.

 Plaintiff argued that the summary was admissible under the Uniform Business Records as Evidence Act, §§ 1–170 through 1–173. It is clear the exhibit was not made admissible by the Act because it was a summary of antecedent records and therefore was not made in the "regular course of business at or near the time of the * * * event."[1]

Under the circumstances of this case as presented to the trial court, plaintiff's exhibit 2 should not have been received into evidence. Since it constituted the plaintiff's sole proof of its claim the judgment must be vacated and the matter remanded for further proceedings.

Reversed and remanded for new trial.

McCLINTOCK, J., was not a member of this court at the time of oral argument, and he therefore did not participate in the consideration or decision of the case.

1. Section 1–172, W.S.1957, provides: "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and, if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."